[Docket No. 7]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BETSY MARPLE, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, COUNTRYWIDE HOME LOANS, INC.,<br><br>　　　　Defendants. | Civil No. 07-4402 (RMB)<br><br><br><br>**OPINION** |

APPEARANCES:

Michael B. Pisani
1290 Club House Road
Gladwyne, PA 19035
　　Attorney for Plaintiff

Martin C. Bryce
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000, Main Street, Suite 500
Woorhees, NJ 08043
　　Attorney for Defendants

**BUMB**, United States District Judge:

**I.　INTRODUCTION**

　　This matter comes before the Court upon Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim. Plaintiff is a Pennsylvania resident who obtained a residential mortgage loan from Defendants for property located in Ocean City,

1

New Jersey.  Defendant Countrywide Financial Corporation is a Delaware corporation engaged in mortgage lending and other real estate finance-related businesses.  Defendant Countrywide Home Loans, Inc. is the subsidiary of Countrywide Financial Corporation; it is one of the largest home loan issuers in the United States.

Plaintiff has filed the present action, individually and on behalf of a nationwide class, alleging that Defendants illegally marked up the charges for services performed in connection with the closing on her residential mortgage loan.  The three-count Complaint alleges violations of (1) the "no fee splitting" provision of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b), (2) the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq., and (3) the New Jersey common law doctrine of unjust enrichment.  Defendants now move to dismiss the Complaint.

## II.  FACTS[1]

On or about May 27, 2004, Plaintiff obtained a residential mortgage loan from Defendants for property located in Ocean City, New Jersey.  At the closing, Plaintiff received a HUD-1 statement

---

[1] The facts are taken from the Complaint and the statement of facts contained in Plaintiff's Opposition.  As required on a motion to dismiss, the facts are set forth in a light most favorable to Plaintiff.

2

(as required by federal law) which provided an itemized list of the various settlement costs to be paid.  Among the charges listed (and paid by Plaintiff) were a $73 charge for "Tax Service Fee to Countrywide Home Loans, Inc." and a $25 charge for Flood Certification to Countrywide Home Loans, Inc."  Plaintiff alleges that these services (and perhaps others) were not actually performed by Countrywide Home Loans, Inc., but rather by a third party, Land Safe Real Estate Closing Services.  According to the Complaint, Land Safe only charged Defendants $66 for the Tax Services and 18 for the Flood Certification, pursuant to agreed-upon fee schedules.  Thus, Plaintiff alleges that Defendants marked up the charges for these services by $7 each and pocketed this money in violation of the "no fee-splitting" provision of Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2607(b).[2]

Plaintiff further alleges that Defendants took affirmative steps to fraudulently conceal its violations.  Specifically, Plaintiff alleges that Defendants (1) misrepresented that 100% of the fees were being paid to Countrywide Home Loans, Inc. and (2) pre-programmed their computer system (the Countrywide Loan

---

[2] This section provides, "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."  12. U.S.C. §2607(b).

Underwriting Evaluation System ("CLUES")) to populate the HUD-1 form with the marked up fees.  Because of these acts of affirmative concealment, Plaintiff claims that she was unable to discover the violations until "after she began investigating abusive practices by Defendants in connection with their lending services that were brought to light in the media in August, 2007."  (Compl. ¶ 48).

Finally, Plaintiff alleges that other individuals were charged, and paid, the same undisclosed mark-ups by Defendants for real estate settlement services in connection with residential and/or commercial mortgage loan applications processed by Defendants.  Thus, Plaintiff seeks to bring this action both individually and as a nationwide class action on behalf of herself and all others similarly situated.

**III. STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied if the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)(internal citations omitted).  Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

4

need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted).

A district court must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991); Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff has alleged "enough facts to state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.  Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

**IV.    DISCUSSION**

    **A.    Statute of Limitations for RESPA Claim (Count I)**

Defendants argue that Plaintiff's RESPA claim is barred by the one-year statute of limitations. (Def. Motion at 6). RESPA requires that actions brought pursuant to § 2607 be asserted within one year from the date of the occurrence of the violation. See 12 U.S.C. § 2614. Since the alleged RESPA violation occurred on May 27, 2004, the closing date of the mortgage loan, the one-year statute of limitations expired on May 27, 2005. See, e.g., Smith v. EquiCredit Corp., 2002 WL 32349873 at *3 (E.D. Pa. Oct. 4, 2002). Accordingly, Defendants contend, Plaintiff's September 3, 2007 filing of this action is time-barred.

Plaintiffs do not contest the one-year statute of limitations, the date of the alleged violation, nor the date of filing, but, rather, argue that the limitations period should be equitably tolled. To invoke the doctrine of equitable tolling, a plaintiff must allege the following:

> (1) that the defendant actively misled the plaintiff;
> (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts.

Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006), cert. denied, 127 S. Ct. 1267 (2007).

    **1.    Plaintiff's Allegations that Defendants Misled Her**

Plaintiff alleges that Defendants misled her and prevented her from recognizing her claim within the one-year period by concealing the mark-ups in two ways.  First, Plaintiff claims that Defendant "falsely stat[ed] on the HUD-1 [form] that 100% of all of the Fees collected went to 'Countrywide Home Loans, Inc.'" (Compl. ¶ 25).  Second, Plaintiff argues that Defendants "pre-programm[ed] the 'Countrywide Loan Underwriting Evaluation System,' known internally as 'CLUES,' which then automatically 'populated' the respective '800 Series Line Item Charges' on Plaintiff and Class members' HUD-1 Forms with the amounts that Plaintiff and Class members were charged for Flood Certifications and Tax Services."  (Id. ¶ 29).

Defendants argue that in order for equitable tolling to apply, the alleged fraudulent concealment must have "consisted of more than [Defendants'] alleged failure to reveal the mark-ups in Plaintiff's HUD-1 Settlement Statement, the very document through which the fees, including the mark-ups, were assessed."  (Def. Motion at 8).  As explained by the Eastern District of Pennsylvania, "mere silence or nondisclosure is not enough to trigger estoppel, the adversary must commit some affirmative independent act of concealment upon which the plaintiffs justifiably rely in order to toll the statute."  <u>Heintz Corp. v. Electro Methods, Inc.</u>, 1995 WL 405721 at *5 (E.D. Pa. June 20, 1995) (internal citation and quotations omitted).  Defendants contend that Plaintiff's allegations concerning the HUD-1 form

and the CLUES system do not constitute "affirmative independent acts of concealment" and are therefore insufficient to invoke equitable tolling.  (Def. Motion at 8).

This Court disagrees.  Contrary to Defendants' characterization of Plaintiff's claims, Plaintiff does not allege mere non-disclosure of the mark-ups.  Rather, Plaintiff alleges that Defendants "falsely stat[ed] on the HUD-1 that 100% of all of the Fees collected went to 'Countrywide Home Loans, Inc.'" (Compl. ¶ 25).  This allegation constitutes an "affirmative independent act of concealment" and, thus, sufficiently states a claim.  See Boudin v. Residential Essentials, LLC, 2007 WL 2023466 at *5 (S.D. Ala. July 10, 2007) (noting that "the HUD-1 was not merely silent as to the allocation of the $120, it was affirmatively misleading that the entire $120 represented the probate court's charge").  Plaintiff's allegations concerning the CLUES system are also affirmative evidence of misrepresentation and suffice for purposes of stating a claim.

Defendants also assert that because the HUD-1 forms "say nothing about the existence or non-existence of any mark-ups[,]" the HUD-1 form could not have "concealed" the mark-ups.  (Id. at 9).  In support of this argument, Defendants cite the decision in Moll v. U.S. Life Title Ins. Co. of N.Y., 700 F. Supp. 1284, 1293 n. 6 (S.D.N.Y. 1988), in which the court declined to equitably toll the plaintiff's RESPA claim on the basis of non-disclosures on the HUD-1 form:

>Indeed, were this Court to hold that entries on HUD-1 forms standing alone, constituted evidence of fraudulent concealment, the RESPA statute of limitations would have little meaning.  Section 4 of RESPA, 12 U.S.C. § 2603, requires that HUD-1 forms be used in all transactions in the United States involving federally related mortgage loans.  If fraudulent concealment were established whenever a title insurance company failed to disclose the ultimate disposition of premiums on an HUD-1 form, equitable tolling would be applicable for virtually all RESPA claims.  Had Congress intended this result, it is unlikely that it would have enacted a general rule requiring that RESPA claims be brought within a year of the occurrence of the violation.

While the Moll decision may appear persuasive at first blush, this Court finds the present case distinguishable.  In the Moll decision, the court explained that a RESPA claim could not be equitably tolled based on a defendant's "fail[ure] to disclose the ultimate disposition of premiums on an HUD-1 form..."  Id. (emphasis added).  Here, however, Plaintiff does not allege that the HUD-1 form merely failed to disclose the ultimate disposition of premiums, but that the HUD-1 form falsely stated that 100% of the premium was going to Defendants.  Thus, this is not a case of mere non-disclosure, but affirmative concealment.  The rationale in Moll is therefore inapposite.[3]

Similarly, Defendants' reliance on the "identity of conduct

---

[3] To the extent Defendants interpret Moll to mean that misrepresentations on a HUD-1 form can never form the basis for fraudulent concealment, this Court declines to make such a broad interpretation.  Indeed, earlier in the Moll opinion, the court stated, "[m]isrepresentations as to the disposition of the title insurance premiums are certainly of the type which would justify tolling the statute of limitations."  Moll, 700 F. Supp. at 1292.

argument" as explained in In re Community Bank, 467 F. Supp. 2d 466 (W.D. Pa. 2006), is misplaced.  That case involved alleged violations of the Truth-in-Lending Act ("TILA"), as opposed to RESPA violations, a significant distinction.  As the Community Bank court explained, in the case of a TILA violation, "the fraudulent act(s) that provide the factual predicate for the claim, i.e., inaccurate loan documents, cannot also satisfy the factual predicate justifying equitable tolling."  Id. at 479.

By contrast, in the case of a RESPA violation, it is not the fraudulent act that provides the factual predicate for the claim; rather, it is the fee splitting that forms the basis of the claim.  Accordingly, the fraudulent act may properly serve as the basis for equitable tolling.  The Court in Williams v. Saxon, 2007 WL 2828752 at *4 (S.D. Ala. Sept. 27, 2007), explained the distinction as follows:

> For RESPA purposes, the violation is not the failure to make a disclosure, but is instead the payment or splitting of fees other than for services actually performed.  Thus, in the RESPA context, the violation occurs when fees are improperly accepted, split or shared.  Any fraudulent concealment or deception in the closing documents would not violate the statute.  Thus, this Court properly looked to the loan documents in Boudin for evidence of fraudulent concealment to support equitable tolling because the alleged misrepresentations in the loan documents were not violations of RESPA per se; therefore, <u>there was no identity of conduct between the alleged RESPA violation and the alleged fraudulent concealment warranting equitable tolling</u>.

Id. (internal citations omitted) (emphasis added).  Accordingly, the alleged misrepresentations on the HUD-1 form are not the

predicate for the RESPA claim itself and may properly serve as the basis for Plaintiff's fraudulent concealment allegation.

Beyond the inapplicability of the cases cited by Defendants, the Court finds the cases cited by Plaintiff directly on point. Indeed, the facts in <u>Price v. Countrywide Home Loans, Inc.</u>, 2005 WL 2354348 (S.D. Ga. Sept. 26, 2005), are nearly identical to the allegations in this case. In <u>Price</u>, the plaintiff alleged that the defendant (also Countrywide Home Loans, Inc.) violated the no fee splitting provision of RESPA by marking up the charge for credit reports. To equitably toll the limitations period, the plaintiff alleged that "the HUD-1 statement actively misled him" because it "stated that Countrywide provided the credit report, and that the company would receive all fees associated with the report." <u>Id.</u> at *4. The court found that the misrepresentation on the HUD-1 form sufficed to toll the statute of limitations:

> The misrepresentation that prevented Joel Price's inquiry was Countrywide's decision to list itself as the provider of the credit report and recipient of all fees associated therewith, instead of showing that it was retaining seventeen dollars, and paying the rest to [the third party who actually performed the credit report]. ...
> This contrivance may have prevented a reasonably prudent borrower from exercising ordinary diligence, such that it would be inequitable to apply the statute of limitations to Price's claim.

<u>Id.</u> at *4-5.

Here, Plaintiff similarly alleges that Defendants actively misled her by making false representations on the HUD-1 statement concerning their retention of the fees for Flood Certification

11

and Tax Services. Just as the court in <u>Price</u> found the allegations sufficient to warrant equitable tolling, this Court also finds Plaintiff's allegations in this case sufficient for purposes of equitable tolling.

### 2. Plaintiff's Due Diligence

Defendants argue that even if Plaintiff has adequately alleged that Defendants misled her, Plaintiff has "failed to allege any sort of reasonably diligent inquiry to discover the alleged overcharges[,]" as required to invoke equitable tolling. (Def. Motion at 10). However, contrary to Defendants' argument, Plaintiff did allege that she "engaged in acts of due diligence[,]" including "reviewing settlement documents" such as the HUD-1 form, "attending the settlement of her loan," "engaging the services of a realtor to represent her at the settlement," and "asking the realtor questions regarding the preparation of the settlement documents" including the HUD-1 form. (Compl. ¶ 47). The question is whether these allegations are sufficient to support equitable tolling. In <u>Boudin</u>, the court found that the complaint "me[t] the mark" concerning the requisite due diligence allegations because it alleged that Plaintiff "reviewed the HUD-1 and other relevant loan documents and actively participated in all aspects of the loan transaction." <u>Boudin</u>, 2007 WL 2023466 at *5.

More significantly, however, as explained by the <u>Price</u> court,

> [i]n most instances, the "issue of when a plaintiff is on 'notice' of his claim is a question of fact[,]" and, generally, <u>whether a plaintiff exercised due diligence is also a question properly reserved for jury determination</u>.

<u>Price</u>, 2005 WL 2354348 at *3 (emphasis added) (quoting <u>Morton's Market, Inc. v. Gustafson's Dairy, Inc.</u>, 198 F.3d 823, 832 (11th Cir. 1999)).[4]

In this case, Plaintiff has alleged that she actively participated in the settlement process and reviewed the relevant documents and "was only able to discover the violations of RESPA after she began investigating abusive practices by Defendants in connection with their lending services that were brought to light in the media in August, 2007." (Compl. ¶ 48). Given the alleged concealment of the mark-up on the HUD-1 form, it is difficult to imagine what more Plaintiff could have done to discover the mark-ups on her own. Yet, this Court makes no ruling as to whether Plaintiff's conduct actually constitutes due diligence. Rather, this Court merely holds that, taking the facts in the light most favorable to Plaintiff, the allegations in the Complaint concerning Plaintiff's due diligence are sufficient to withstand Defendants' motion to dismiss.

---

[4] In <u>Morton</u>, the Eleventh Circuit noted, "we have held, along with a majority of the circuits, that the issue of when a plaintiff is on 'notice' of his claim is a question of fact for the jury." <u>Morton</u>, 198 F.3d at 832 (citing <u>Ballew v. A.H. Robins Co.</u>, 688 F.2d 1325 (11th Cir. 1982); <u>Maughan v. SW Servicing, Inc.</u>, 758 F.2d 1382, 1387 (10th Cir. 1985); <u>Lundy v. Union Carbide Corp.</u>, 695 F.2d 394 (9th Cir. 1982); <u>Renfroe v. Eli Lilly & Co.</u>, 686 F.2d 642 (8th Cir. 1982)).

**B.   Claims Against Countrywide Financial Corporation**

Defendants argue that all claims against Countrywide Financial Corporation, the parent corporation, should be dismissed because Plaintiff has not pled allegations sufficient to pierce the corporate veil.  However, as the Complaint makes clear, Plaintiff does not allege that Countrywide Financial is liable merely because it is the parent of Countrywide Home Loans; rather, Plaintiff alleges that Countrywide Financial is liable because it was a "direct participant" in the mark-up scheme. Specifically, Plaintiff has alleged that Countrywide Financial "acted as a direct participant" by "marking-up Tax Services and Flood Certification Fees and accepting the Fees, itself, collecting the mark-ups and pre-programming the CLUES system to accomplish the act of 'marking-up' and the concealment thereof." (Pl. Opp. at 12 (citing Compl. ¶¶ 1,4,5,16,24-31)).

While Plaintiff must eventually come forward with proof of Countrywide Financial's direct involvement in the mark-up scheme, at the motion to dismiss stage, these allegations are sufficient to state a claim against Countrywide Financial.  See, e.g., Yates v. All American Abstract Co., 487 F. Supp. 2d 579, 581 (E.D. Pa. 2007) (holding that "[a]lthough the evidence may later reveal that [the parent corporation] never participated in the alleged scheme, [plaintiff] has undoubtedly alleged [the parent's] direct participation and has met it burden in defeating defendants'

motion to dismiss").[5]


C.  **Joinder of Necessary Party**

Finally, Defendants contend that Plaintiff has failed to join a necessary party – namely, Jennifer McGilloway, Plaintiff's co-obligor on the mortgage loan. (Def. Motion at 13). According to Defendants, Ms. McGilloway is a necessary party under Rule 19 of the Federal Rules of Civil Procedure because she, alongside Plaintiff, executed the loan documents and paid the fees at issue and, thus, has the same right to recovery as Plaintiff. (Id. at 16). To "prevent multiple liabilities" and "unfair harassment from multiple litigation," Defendants argue, Plaintiff must add Ms. McGilloway as a party plaintiff to this action or face dismissal. (Id. at 16-17)

In response, Plaintiff argues that Ms. McGilloway is not a necessary party because she did not actually pay the fees at issue, notwithstanding her role as co-obligor on the mortgage loan. (Pl. Opp. at 15-16). To that end, Plaintiff submitted the affidavit of Ms. McGilloway, in which Ms. McGilloway affirms that she did not pay any of the fees at issue in this case. (McGilloway Aff. ¶¶ 5-7).

Under Rule 19(a) of the Federal Rules of Civil Procedure, a

---

[5] Although Yates involved allegations that the parent corporation participated in a "sham entity" scheme, that factual distinction does not render the legal rationale inapplicable in this case.

person deemed a "required party" for any of the following reasons:

> (A) in the person's absence, the court cannot accord complete relief cannot among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
>> (I) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

In this case, Defendants are correct that Ms. McGilloway is a necessary party that should be joined to this action. As Plaintiff's co-obligor, Ms. McGilloway has an interest in this litigation identical to that of Plaintiff. Even though Ms. McGillowy attested to that fact that she did not actually pay for any of the fees at issue, the loan documents bear her name and grant her the same legal standing as Plaintiff. Allowing Ms. McGilloway to avoid involvement in this lawsuit by virtue of her affidavit would set a burdensome precedent, requiring courts to question all potential class members as to whether they actually paid the fees, regardless of their roles as co-obligors. This Court does not see the benefit of invoking another layer of inquiry regarding class membership, particularly given the clear limitations established by the loan documents themselves.

Because Ms. McGilloway is the co-obligor on Plaintiff's mortgage loan, she has the same legal rights as Plaintiff and, thus, an interest in this litigation. To "avoid the possibility of double or inconsistent judgments and to provide complete relief among all parties to the contract[,]" Ms. McGilloway should be joined to this action. <u>Moll v. US Life Ins. Co. of New York</u>, 654 F. Supp. 1012, 1018-19 (S.D.N.Y. 1987) (ordering joinder of plaintiff's husband/co-obligor to RESPA class action in order to "ensure that all 'interested' parties 'will have the benefit of finality as to the judgment rendered'").

**V.   CONCLUSION**

For the aforementioned reasons, Defendant's motion to dismiss the Complaint is denied and Plaintiff is ordered to join Ms. McGilloway to this action. An appropriate Order will issue this date.

Dated:  May 7, 2008              s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 UNITED STATES DISTRICT JUDGE